## STATE ex VETERANS OF FOREIGN WARS OF THE U S v BENNETT et

Ohio Appeals, 2nd Dist, Franklin Co

No 2925.   Decided May 19, 1938

James F. Hurd, Columbus and R. M. Draper, Columbus, for relator.

John L. Davies, Columbus, City Attorney, Columbus, Baxter Evans, Columbus, and Lawrence Curtis, Asst. City Attorneys, Columbus.

## OPINION

### By THE COURT

This matter is before this court on a proceeding in mandamus wherein the order of the court is sought to compel certain officials of the city of Columbus to issue to the Veterans of Foreign Wars and their proper assistants a license or permit to sell "Buddy Poppies" on the streets of Columbus Friday and Saturday the 20th and 21st of May, 1938, as provided in an ordinance of the city, a copy of which is attached, and that certain officers, constituting a board of appeal be enjoined from doing any act interfering with the granting of such license.

The petition alleges that in pursuance of an ordinance of the City of Columbus, the organization by its proper officials made application to the Director of Public Safety for a permit and that the Director of Public Safety, without just reason, refused to endorse his approval. It is further alleged that the organization appealed to the officials of the city who are authorized under said ordinance as a board of appeal to consider an appeal from a refusal of the Director of Public Safety and that such appeal board sustained the position of the director. It is alleged that all of said actions of the officials of the city are capricious, arbitrary and unlawful.

The Director of Public Safety by written communication to the officials of the organization stated:

"By virtue of authority vested in me by ordinance No. 337-33, as acting Director of Public Safety I hereby refuse the request of your organization for permission to obtain a permit to sell V. F. W. Buddy Poppies on the streets of Columbus on Friday and Saturday, May 20 and 21, for the reason that city council after due deliberation, by resolution, has already granted permission to the American Legion Auxiliary to sell poppies on the streets of Columbus one week later, Friday and Saturday, May 27 and May 28th, and it is my opinion that should a permit be issued to your organization under the circumstances same would be incompatible with public interest. For these reasons I hereby refuse to issue said permit as requested."

At the outset we are met with the necessity of an interpretation of the ordinance. Without attempting to discuss it in detail, an ordinance has been duly passed by the City of Columbus and is now a

valid ordinance of the city whereby it is provided that it shall be unlawful for any organization or group of individuals to sell any article upon the streets of Columbus on the plea or statement that such sale is for charitable or benevolent purposes, unless such person or organization shall have first been duly licensed, and that any person or organization desiring a permit shall file an application with certain information with the Director of Public Safety.

The ordinance provides,

"The Director of Public Safety shall make such investigation as he deems necessary in regard thereto, and if satisfied that such cause for such solicitation to be made is worthy and not incompatible with public interest, and a license or permit should be issued therefor, he shall endorse his approval thereon."

If the director refuses to approve an application, then the party applying therefor may appeal to certain designated officers who have the authority as a board of appeals to reverse the action of the director. It the board shall reverse the action of the director, the auditor shall issue the license.

We are of the opinion that this ordinance provides the exclusive machinery through which such permits are to be issued or withheld. This brings us to the conclusion that the ordinance cannot be repealed or affected by the resolution of the city council referred to in the director's letter above, by which the council invades the right already granted by duly enacted ordinances to a specific officer to endorse his approval of a permit and that any action that the city council may have taken contrary to the provisions of the ordinance was without effect or a nullity and could not furnish a valid excuse to or authorize the Director of Public Safety to refuse his approval of an application of others seeking a permit who have complied with the ordinance in making their application, or to justify the board of appeals in refusing to reverse the action of the director.

"The provisions of the foregoing sections shall not apply when at least seventy-five percent of the proceeds of the solicitations shall go directly to such charitable purpose and no part of said seventy-five percent is deducted for the cost of such solicitations."

The Veterans of Foreign Wars and the American Legion have introduced evidence to the effect that more than 75% of the proceeds of the sale of each organization go to the designated benevolent purposes, and that no part is deducted for cost of solicitation. The relators in their application claim exemption as provided in §6.

It might be urged that neither have a right or, at least, are not required to make the application for the license provided for by the ordinance, but that each might proceed to sell their wares upon the streets of the city and could not be prevented from doing so by lack of such license or permit so far as this ordinance is concerned.

While we might, if the question were raised, be of this opinion, yet we feel that so long as an organization has invoked the machinery provided by the ordinance and no question has been raised by the city, that the organization is sufficiently within the provisions of the ordinance as to be entitled to the permit or license sought upon compliance with the provisions of the ordinance.

We again call attention to the fact that the authority granted to the Director of Public Safty to refuse a permit is based upon his finding that the purposes for which the sale is sought are against public interests.

Sec 3 provides:

"* * * and if satisfied that such cause for such solicitation to be made is worthy and not incompatible with public interest and a license or permit should be issued therefor he shall endorse his approval thereon."

There is no intimation and no evidence could be produced to the effect that the purpose for which the sale is sought is against public interests. When it appears that the cause to be served by the sale is not compatible with public interest, the Director of Public Safety is authorized to refuse his endorsement of the license. This provision of the ordinance is manifestly to protect the use of the streets for the sale of articles, the proceeds of which are to be devoted to unworthy purposes or purposes which would be inimicable to the public interests. Fortunately no one has sought to use the streets of the city to raise money to promote objects against the public interest, but it can easily be conceived that some might seek to do an objectionable thing if it were not within

the power of the city to find that the object sought was against public interests, and therefore refused the permit.

The communication from the Public Safety Director in which he states that the permit is refused because in his judgment, it is incompatible with public interest, ·is based solely upon the fact that in his judgment it is incompatible with public interest to permit two organizations having common or like worthy purpose, to sell upon the streets of Columbus on two succeeding weeks.

It does not appear to us that the ordinance gives him this discretion but that it does confine him to a refusal on account of the possible objectionable character of the enterprise sought to be promoted.

If in the judgment of the council the discretion vested in the director, should be broadened so as to permit him to withhold his approval for the reason that it is not desirable to grant to two organizations, seeking the same or like purpose, a permit to use the streets on dates of approximate coincidency, the ordinance can be readily amended so as to effectuate this purpose.

These considerations bring us to the point of determining whether or not the city officials have abused the discretion reposed in them by the ordinance. The pleadings, admissions and evidence disclosed the fact that the relators have made an application to the proper officials for a permit to sell the "Buddy Poppy" to the citizens of Columbus and that the purpose of the sale is without question not incompatible with public interest and that as a matter of fact no other organization has been legally granted such a permit under the provisions of the ordinance. . Under these conditions we cannot hold that the city can refuse the permit for the reasons given in the director's statement.

It is to be regretted that two such splendid organizations having in contemplation the raising of funds to be expended for the worthy causes set out in their respective charters, should feel that the activities of one jeopardized the interests of the other. We readily understand that certain dates for the sale of the poppies are preferred and that there is a natural pride in having been the first, to till this field, and we also can visualize that the sales by one organization on one day may diminish the sales of the other on a different day, yet we feel that the willingness of the public to support the activities of each organization is prompted by the conviction that

both are worthy of popular support and that the money given to the solicitors on both days will go for worthy objects.

It might be suggested by some that if the public realized there was friction between the two organizations they would withhold or diminish their contributions.

It might be that both organizations working harmoniously in the poppy sale on one day would create infinitely more of public good-will toward both fine organizations and the memorial which the sale is designed to commemorate than each working alone on separate days antagonistically to one another.

The matter that we have before us relates solely to the ordinance in question and we do not presume to state that the city may not have other appropriate ordinances by which they may control the use of the streets for purposes of sales.

These respondents have filed a belated joint answer, which we have examined with care, but in which we find nothing which states a good defense to the petition of the relator.

Viewing the matter as we do, we are of the opinion that the public officials named should have granted the permit applied for and that the refusal to do so was beyond the power reposed in them by the ordinance.

Alternative writ made permanent.

BARNES, PJ, and GEIGER, J, concur.

## CONCURRING OPINION

By HORNBECK, J.

I agree with my associates that on the facts in this case the Director of Public Safety is required to issue a permit to relator because it must be determined that "the cause for such solicitation to be made is worthy." Having so found it could not be held that the cause "is incompatible with public interest." The director has refused unconditionally to issue a permit. However, the mandatory authority of this court has been exercised and exhausted when we order the director to issue a permit to the relator.

The express powers granted to the Director of Public Safety by the ordinance are to issue licenses and grant permits to the organizations named, which have met the requirements, to use the streets, offices and buildings of the City of Columbus for public solicitation of funds. These granted powers carry with them by implication such incidental powers as are indispensable

474

to accomplish the objects and purposes of the ordinance.

Among other facts required to be set forth in the application for a permit is "the time when such solicitation shall be made," etc. The director on receipt of the application is required to make such investigation as he deems best before issuance of the permit.

An indispensable purpose of the ordinance is that the time when the sales or solicitations shall be conducted be given consideration and acted upon by the director. The director has certain discretionary power to fix the time for which the permit shall be issued. Without such power there could be no order or system in the administration of the ordinance. There may be little of opportunity to exercise this discretion in the instant case, but we should not act so that it may be implied that it does not obtain.